# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES INTERNATIONAL
UNION NATIONAL INDUSTRY PENSION FUND
11 Dupont Circle, N.W., Suite 900
Washington, DC 20036-1202

and

ANDREW STERN, RODERICK S. BASHIR,
CHARLIE RIDGELL, SHARLEEN STEWART,
JAMES BERG, EDWARD MANKO, JOHN J.
SHERIDAN, LARRY T. SMITH, DAVE
STILLWELL, AS TRUSTEES OF THE SERVICE
EMPLOYEES INTERNATIONAL UNION
NATIONAL INDUSTRY PENSION FUND
11 Dupont Circle, N.W., Suite 900
Washington, DC 20036-1202

                               Plaintiffs,

                                            C.A. No.

v.

BROOKS & BROOKS SERVICES, INC.,
1700 Pennsylvania Ave. N.W., Suite 525
Washington, DC 20006

SERVE:
John Steffman
1700 Pennsylvania Ave. N.W., Suite 525
Washington, DC 20006

                               Defendant.

## <u>COMPLAINT UNDER ERISA FOR WITHDRAWAL LIABILITY AND INTEREST</u>

### <u>INTRODUCTION, JURISDICTION AND VENUE</u>

1.      This is a civil action brought by an employee benefit plan and the trustees of an employee benefit plan pursuant to Sections 502(a)(3), (d)(1), (g)(2), 515, 4219, 4221 and 4301 of the Employee Retirement Income Security Act of 1974, <u>as amended</u> ("ERISA"),    29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), 1145, 1399, 1401 and 1451, to collect withdrawal liability amounts owed, accrued interest, reasonable attorneys fees, and other legal or equitable relief.

2.      Jurisdiction is conferred upon this court by Sections 502(e), (f), 4221(b) and 4301(a), (c) of ERISA, 29 U.S.C. § 1132(e) and (f), 29 U.S.C. § 1401(b), 1451(a) and (c). Jurisdiction also lies under 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3.      Venue is proper under Section 502(e)(2) and Section 4301(d) of ERISA, 29 U.S.C. § 1132(e)(2), 1451(d), because the Plaintiff employee benefit plan is administered and located in Washington, D.C, and Defendant Brooks & Brooks Services, Inc. transacts business in this District.

### <u>PARTIES</u>

4.      Plaintiff Service Employees International Union National Industry Pension Fund ("Pension Fund") is an employee pension benefit plan within the meaning of Section 3(2), (3) of ERISA, 29 U.S.C. § 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees of contributing employers.  The Pension Fund is and at all times material herein has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Plaintiff Pension Fund was established

and exists pursuant to collective bargaining agreements between the local unions affiliated with

the Service Employees International Union ("SEIU") and various employers, including

Defendant Brooks & Brooks Services, Inc.  The Pension Fund is administered at 11 Dupont

Circle, N.W., Suite 900, Washington, D.C. 20036.  A true, correct and complete copy of the

Pension Fund Agreement and Declaration of Trust ("Pension Trust") is attached as Exhibit A to

this Complaint.

     5.     The Pension Fund is governed by a Board of Trustees, half of whom are appointed

by the contributing employers and half by the SEIU.   The Board of Trustees is the sponsor and

administrator of the Pension Fund, within the meaning of Section 3(16)(A) and (B) of ERISA,

29 U.S.C. § 1002(16)(A) and (B).

     6.     Plaintiff Trustees of the Pension Trust, Andrew Stern, Roderick S. Bashir, Charlie

Ridgell, Sharleen Stewart, James F. Berg, Edward Manko, John J. Sheridan, Larry T. Smith, and

David S. Stillwell (collectively the "Trustees") are the duly authorized Trustees of the Plaintiff

Pension Fund whose duty it is to administer the Plaintiff Pension Fund for the benefit of the

participants and beneficiaries of the Plaintiff Pension Fund.  The Trustees are authorized and

empowered to maintain this action.  The Trustees are fiduciaries within the meaning of Sections

3(21)(A), 502(a)(3), (e)(1), (g)(2) and 4301(a) of ERISA, 29 U.S.C. §§ 1002(21)(A) and

1132(a)(3), (e)(1) and (g)(2).  They bring this action on behalf of the Pension Fund and the

participants and beneficiaries of the Pension Fund pursuant to ERISA Sections 4216 through

4219, 502(a)(3), (d)(1), (g)(2) and 515, 29 U.S.C. §§ 1396 through 1399, 1132(a)(3), (d)(1) and

(g)(2) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

3

7.     Defendant Brooks & Brooks Services, Inc. is registered as a corporation and operates under the laws of the District of Columbia.  Defendant Brooks & Brooks Services, Inc's. corporate address is 1700 Pennsylvania Avenue N.W., Suite 525, Washington, DC 20006.

8.     Defendant provides janitorial services to federal, state, local agencies and commercial clients.  Upon information and belief, Defendant  maintains its offices and primary place of business in the District of Columbia at the address of 1227 Good Hope Road S.E., Washington, D.C.  20020.

9.     Defendant, at all relevant times, employed workers who were and are represented by SEIU Local 79 ("Local 79"), affiliated with the SEIU, and who are participants in the Pension Fund.  Local 79 and the Defendant were parties to a collective bargaining agreement that established the terms and conditions of employment for employees of the Defendant.  The most recent collective bargaining agreement between Local 79 and Defendant covered the period from November 1, 2000 to October 31, 2003 ("2000 Agreement").  A true, correct and complete copy of the 2000 agreement is attached as Exhibit A to this Complaint.

10.     At all times material to this Complaint, Defendant was an "employer" in an "industry affecting commerce" as defined by Sections 3(5), (9), (11), (12) and (14) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12) and (14), and an "employer whose activities affect commerce" within the meaning of Section 301(b) of the LMRA and Section 2(2), (6), and (7) of the LMRA, 29 U.S.C. § 185(b); 152(2), (6), and (7).

### FACTUAL BACKGROUND AND STATEMENT OF CLAIM

11.     Defendant, at all relevant times, employed workers represented by Local 79, and was obligated under Collective Bargaining Agreements to pay pension contributions to the

4

Pension Fund on behalf of its covered employees.  See Exhibit A to this Complaint, Article XIII, p. 12.

12.    The Pension Fund determined that as of December 1, 2004, there was a complete withdrawal by the Brooks & Brooks from the Pension Fund within the meaning of section 4203(a) of ERISA, 29 U.S.C. § 1383(a).  The complete withdrawal followed the Defendant losing its contract to perform services at the only site for which it was obligated to make contributions to the SEIU Pension Fund.  The Pension Fund sent an initial notice of withdrawal on August 17, 2005 advising Defendant that it owed withdrawal liability in the amount of $100,565.42.  A true, correct and complete copy of the August 2005 notice and demand with payment schedule is attached as Exhibit B to this Complaint.

13.    Due to errors in the original calculation of the withdrawal liability amount, the Pension Fund sent a revised notice and demand for payment by letter on March 28, 2007, stating that the true amount of withdrawal liability for Brooks and Brooks was $47,006.32.  This letter included a revised payment schedule for $8,066.21 per month for 14 months and $6,820.38 for the final two months, resulting in total payments of  $55.011.39 including amortized interest over the payment period.  A true, correct and complete copy of the March 28, 2007 letter is attached as Exhibit C to this Complaint.

14.    In accordance with section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A), the Defendant had ninety (90) days from receipt of the initial notice and demand to request a review of the amount of the liability and/or the schedule for liability payments.

15.    The Defendant did not timely request review pursuant to section 4219(b)(2)(A) of

ERISA, 29 U.S.C. § 1399(b)(2)(A). Consequently, Defendant has lost the right to challenge the withdrawal liability assessment under Section 4221(b)(1) of ERISA, 29 U.S.C. § 1401(b)(1).

16.    After the Defendant failed to make its required payments, the Pension Fund sent demand letters on June 20, 2007 and July 20, 2007 demanding payment of the withdrawal liability in a timely fashion. To date, Defendant has failed to respond to these letters or make any payments.

17.    In accordance with section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), a party is in default if it has not cured its failure to pay its withdrawal liability installment payments within sixty days following a demand. Defendant did not cure its failure to pay within the sixty (60) day period and is in default. As a result, Defendant is liable for the total unpaid balance of the withdrawal liability in the amount of $47,006.32.

18.    Pursuant to Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), Defendant is in default and Plaintiffs are entitled to an award of the total unpaid balance of the withdrawal liability in the amount of $47,006.32, accrued interest on the unpaid amounts owed from the due date of the first owed payment not timely made, reasonable attorney's fees and costs, and other legal relief as deemed appropriate by the Court. Defendant is also liable for liquidated damages in accordance with the Pension Plan Document and applicable federal law.

19.    Section 10.05(d)(2) of the Pension Plan of the SEIU National Industry Pension Fund provides that interest shall be charged on any amount in default (including accrued interest), from the date the payment was due to the date it is paid. The interest will be equal to the prime rate plus 2% as published in the Wall Street Journal on the first business day of the

6

calendar year in which the payment was due.  For each succeeding calendar year that any amount in default remains unpaid, interest will adjust to the then current prime rate plus 2% as published in the Wall Street Journal on the first business day of the applicable calendar year.

20.    Section 10.05(e) of the Pension Plan of the SEIU National Industry Pension Fund provides that in any suit by the Trustees to collect withdrawal liability, if judgment is awarded in favor of the Plan, the employer shall pay to the Plan, in addition to the unpaid liability and interest thereon as determined under subsection (d)(2), liquidated damages equal to the greater of (1) the amount of interest charged on the unpaid balance; or (2) 20% of the unpaid amount awarded.

## COUNT I

21.    Plaintiffs reallege and incorporate Paragraphs 1 through 20.

22.    This claim arises under Section 502(a)(3), (d)(1) and (g)(2), and Section 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), (d)(1) and (g)(2) and 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

23.    Defendant has failed to pay the amounts owed for withdrawal liability a period greater than sixty (60) days after notification of failure by the Plaintiff Fund.  As a result, the Defendant is in default under Section 4219 of ERISA.  29 U.S.C. § 1399(c)(5).

24.    Defendant has failed to make any payments of the required withdrawal liability monthly payments in accordance with the payment schedule as provided by the Pension Fund. The Defendant was assessed $47,006.32 in withdrawal liability.  Because Defendant failed to timely contest the assessment, Defendant is now barred from contesting the assessment.

25.     Defendant's failure to timely remit the withdrawal liability amounts owed makes Defendant liable for interest on all late payment amounts according to the Trust Agreement and Section 4219(c)(5) of ERISA.  Interest continues to accrue on these unpaid amounts until the date of payment.

26.     Defendant's failure to timely remit the withdrawal liability amounts owed makes Defendant liable for liquidated damages according to the terms of the Trust Agreement.

27.     Defendant has failed to comply with repeated notices and demands to remit outstanding withdrawal liability payment and interest.

**WHEREFORE**, Plaintiffs respectfully pray that the Court enter judgment on behalf of Plaintiffs against Defendant Brooks & Brooks Services, Inc.,  and:

1.     Declare that Defendant is in default in remitting its withdrawal liability to the Pension Fund;

2.     Enter judgment against Defendant for the withdrawal liability amounts owed to the Pension Fund in the amount of $47,006.32;

3.     Enter judgment against Defendant for interest on the unpaid withdrawal liability amounts owed to the Pension Fund, to be calculated upon judgment in accordance with the procedures laid out in the Pension Plan;

4.     Enter judgment against Defendant for liquidated damages on the unpaid withdrawal liability amounts owed to the Pension Fund the greater of the amount of interest charged on the unpaid balance or $9,401.27 (20% of the withdrawal liability amount);

5.     Require Defendant to reimburse Plaintiffs for all costs incurred in bringing this

8

action, including reasonable attorney fees and court costs, pursuant to the Pension Plan and

Sections 4301(b) and (e) of ERISA, 29 U.S.C. § 1451(b), (e);

6.      Enter an order that this Court will retain jurisdiction of this cause and of the

parties hereto pending compliance with its orders, and;

7.      Award such other relief as the Court deems just and proper.


                              Respectfully submitted,

                              _____/s/_____
                              Richard C. Welch (DC Bar# 485756)
                              Eugene K. Ahn
                              Mooney, Green, Baker & Saindon, P.C.
                              1920 L Street, N.W., Suite 400
                              Washington, D.C. 20036
                              (202) 783-0010
                              (202) 783-6088
                              Counsel for Plaintiffs


April 2, 2008

# EXHIBIT A

AGREEMENT

Between

BROOKS & BROOKS SERVICES, INC.
CAMP SPRINGS, MARYLAND

And

SERVICE EMPLOYEES INTERNATIONAL UNION,
LOCAL 79, AFL-CIO, DETROIT, MICHIGAN

FOR EMPLOYEES AT THE U.S. COURTHOUSE
231 W. LAFAYETTE BLVD., DETROIT, MICHIGAN

Term:              November 1, 2000
THROUGH            October 31, 2003

## TABLE OF CONTENTS

| ARTICLE | TITLE | PAGE | |
|---------|-------|------|---|
| | AGREEMENT | 2 | |
| I. | RECOGNITION | 2 | |
| II. | CHECK-OFF | 3 | |
| III. | SENIORITY | 4 | |
| IV. | HOURS OF WORK & OVERTIME | 5 | |
| V. | HOLIDAYS | 5 | |
| VI. | VACATION | 6 | |
| VII. | DISCIPLINARY ACTION & DISCHARGE | 7 | 7 |
| VIII. | GRIEVANCES & ARBITRATION | 7 | 7 |
| IX. | MILITARY LEAVE | 9 | |
| X. | SICK LEAVE | 10 | |
| XI. | BEREAVEMENT | 10 | |
| XII. | INSURANCE, HEALTH & WELFARE | 10 | |
| XIII. | PENSION | 12 | |
| XIV. | WAGES | 12 | |
| XV. | BULLETIN BOARDS | 13 | |
| XVI. | UNIFORMS | 13 | |
| XVII. | NO DISCRIMINATION | 13 | |
| XVIII. | LEAVE OF ABSENCE | 13 | |
| XIX. | WASHROOM FACILITIES | 14 | |
| XX. | MISCELLANEOUS | 14 | |
| XXI. | COMPLIANCE | 15 | |
| XXII. | DURATION & AMENDMENT | 16 | |
| XXIII. | NO STRIKES – NO LOCKOUT | 16 | |
| | DENTAL EXPENSE BENEFITS | | |
| | VISION CARE EXPENSE BENEFITS | | |

1

## AGREEMENT

THIS AGREEMENT made and entered into as of the 1st day of November, 2000, by and between the SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 79, AFL-CIO, hereinafter designated as the "Union" or party of the First Part, and BROOKS & BROOKS SERVICES, INC. (Federal Building and U.S. Courthouse, Detroit, Michigan), hereinafter designated as the "Employer" or Party of the Second Part.

WITNESSETH THAT WHEREAS, the parties hereto desire to regulate mutual relations between the Employer and the members of the Union with the view of securing harmonious cooperation between the Employer and the Union and averting disputes.

NOW THEREFORE, in consideration of the mutual promises set forth, the parties, hereto, agree with each other as follows:

## ARTICLE I - RECOGNITION

**Section 1.** The Employer recognizes the Union as the exclusive bargaining agent for all regular cleaning employees, except supervisory employees at the FEDERAL BUILDING AND U.S. COURTHOUSE, DETROIT, MICHIGAN, and will bargain with the Union for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment during the term o this Agreement. This recognition is made pursuant to the certification of the Union as such representative by the National Labor Relations Board made under date o~ June 10, 1966, in Case No 7-RC-7333. The term "employee" as used herein shall refer to and include only those employees who are in the bargaining unit which is represented by the Union.

**Section 2.** It shall be condition of employment that all employees of Employer covered by this Agreement who are members of the Union in good standing on the Agreement who are members of the Union in good standing on the effective date of this Agreement is signed, whichever is later, shall on the thirty-first (31st) day following the effective date of this Agreement or the date upon which this Agreement is signed, whichever is later, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date or the date upon which this Agreement is signed, whichever is later, shall, on the thirty first (31st) day following the beginning of such employment become and remain members in good standing in the Union; and in the event an employee covered by the Agreement shall refuse and fail to become a Union member, the Employer shall terminate said employee's employment, and in the event the Employer fails to do so, said Employer shall pay to the Union the amount of union dues and initiation fees. The sum is not and shall not be regarded as a penalty, but as liquidated damages.

Section 3.  A "regular employee" is a full-time employee and a regular member of the Employer staff, who has been continuously in the Employer's employ for thirty-one (31) days and not a contingent, casual, temporary or part-time employee.  However, a contingent, casual, temporary or part-time employee must join the Union if he/she has been regularly employed in a contingent, casual, temporary or part-time basis for a period of thirty-one (31) days or more.

Section 4.  Neither the Union nor any of its members will intimidate or coerce any employee in respect to his right to work or in respect to Union activities or membership, and there shall be no solicitation of employees for Union membership, or dues on Company time.  In the event that the Union notifies the Company that an employee who us required to be a member of the Union under the terms of this Agreement has failed to do so, the Company will discharge such employee if he fails to cure his default within ten (10) days after receipt of such notice from the Union.

## ARTICLE II - CHECK-OFF

Section 1.  The Employer will deduct from the first pay of each month the Union dues, Initiation Fees and other assessments of each employee covered by this Agreement for who the Employer has signed authorizations.

Section 2.  The Union will furnish the Employer with a check-off list in duplicate each month, indicating thereon the amount due for each employee.  The Employer shall add to the check-off lists furnished by the Union the names, address, social security numbers and dates of hire of any employees whose names do not appear on the check-off lists furnished by the Union.  One copy of the check-off lists furnished by the Union shall be returned with the stipulated amounts and the additional amounts due for the added employees to the Union prior to the fifteenth (15th) of the month in which deductions are made.

Section 3.  The Company will deduct from the wages of the employee and remit to the Secretary-Treasurer of Local 79 the initiation fee and the current uniformly levied Union dues of such members of the Union as individually and voluntarily certify, in writing that they authorize such deductions.  Such authorizations shall be ir-revocable for a period of one (1) year or until the termination of this Agreement, whichever occurs the sooner, and shall be automatically renewed on each anniversary of the date of this Agreement unless revoked; Deductions shall be made the first pay period of each month and the funds will be remitted by the Company on or before the last day of that month, lists shall be in alphabetical order.  Deductions shall be made at the rate, which is in effect on the date of this Agreement unless or until the Company is notified, in writing, by the Union of a change in such rate.

Section 4.  The union agrees to indemnify and hold the Company harmless against any and all liability which may arise by reason of or may result from the operation of this Article of this Agreement.

3

## ARTICLE III - SENIORITY

Section 1.  No employees hired under this Agreement shall be considered to be on probation for a period of thirty-one (31) days, during which time they may be terminated at any time in the Company's discretion.  Upon completion the probationary period, employees shall be placed upon the Seniority list as of the first date of employment at the building. Seniority shall thereafter be defined as service by classification and shall apply in the choice of vacation period and in the case of lay-offs occasioned by reduction in force.

Section 2.  In the event that it becomes necessary to lay-off employees working on a job site or to rehire employees who have been laid off, the following factors will be considered

(a)  Seniority

(b)  Ability to perform the job.

(c)  Strict seniority shall govern among employees who have the ability to perform the job and the oldest employee in length of service shall be the last to be laid off and the first to be hired.

Section 3.  Employees shall not be required to accept temporary or part-time work in order to retain their seniority

Section 4.  Seniority rights shall be lost for any of the following reasons:

(a)  Employees quits.

(b)  Employee does not report for work in a call-back within two (2) working days after being notified by registered mail, exception being extenuating circumstances to be defined by the Company and the union at time point is at issue.

(c)  Employee is discharged for just cause and according to Article VII., Section 1.

Section 5.  An employee who absents himself from his employment and does not notify the Company within forty-eight (48) hours as to the reason for his absence shall be considered as having voluntarily quit his employment, unless precluded from notifying his Employer by an Act of God which is an identifiable event in the geographical area which notification is attempted.

4

## ARTICLE IV - HOURS OF WORK AND OVERTIME

**Section 1**. The standard workday shall consist of eight (8) consecutive hours, exclusive of an unpaid lunch period and five (5) consecutive days shall constitute a standard workweek.

**Section 2**. Time and one-half (1½) shall be paid all time worked in the sixth (6th) consecutive day and for all hours worked over forty (40) in one week. There will be no pyramiding of overtime.

**Section 3**. Double (2) time shall be paid for all hour worked on the seventh (7th) consecutive day of work.

**Section 4**. Employees who will be absent from work are required to notify the company of their absence at least two (2) hours in advance of their starting time.

## ARTICLE V - HOLIDAYS

**Section 1**. All employees under this Agreement shall receive eleven (11) holidays with pay each year. Holidays are as follows:

NEW YEARS DAY, MARTIN LUTHER KING, Jr.'s BIRTHDAY, PRESIDENTS' DAY, MEMORIAL DAY, 4TH OF JULY, LABOR DAY, COLUMBUS DAY, VETERAN'S DAY, THANKSGIVING DAY, CHRISTMAS DAY and the EMPLOYEE'S BIRTHDAY which shall be considered a floating holiday.

As to the employee's birthday, such holiday shall be taken at the discretion of the employee but cannot be taken in conjunction with any of the holidays listed herein. Birthday or Holiday pay shall not apply to substitutes or on-call employees.

**Section 2**. In order to be eligible to receive holiday pay, the employee must work the last regularly scheduled day before the holiday and first regularly scheduled day after the holiday.

**Section 3**. An employee who is required to work on the holiday shall be paid for all hours worked at the rate of time and one-half (1½) and in addition shall be paid the holiday pay at the straight time rate.

**Section 4**. The holiday pay shall not be considered a pay for time worked for the purpose of computing overtime.

Section 5. The Employer agrees that the part-time employees/sub/employees shall be eligible for paid holiday as stipulated in Section 1 provided that he/she works at least 90 hours in the month that the holiday falls.

Section 6. In the event additional holidays shall be proclaimed or added by the Government during the term of this Agreement to those already recognized by Government policy, then all employees covered under this Agreement shall receive those additional holidays with pay.

## ARTICLE VI - VACATION

Section 1. All employees who have completed twelve (12) months of service at the building shall be entitled to vacations with pay based on the following schedule: Effective October 1, 1994.

(a) Two (2) weeks after one (1) year.

(b) Three (3) weeks after five (5) years.

(c) Four (4) weeks after twelve (12) years.

Section 2. Vacation schedule now is two weeks after one year, three weeks after 7 years and four weeks after 15 years. After twelve month of service.

Section 3. For the purpose of determining the amount of pay to be paid to an employee based upon subsections 1. and 2., the average number of hours scheduled to be worked per week by the employee shall be utilized as a basis for determining his vacation pay.

Section 4. For the purpose of calculating vacation time, the Employer shall add Regular, Overtime, Holiday, Sick Leave and Vacation Hours for the year, then pro rate by 260 days per year to arrive at the daily hours the employee would have available for each day on vacation then multiply it by the number of days vacations the employee is entitled to.

There is to be no deduction or loss of vacation of an employee for reason of illness up to a maximum of sixty-(60) day's absence from work.

Section 5. If a holiday occurs during the vacation period of any employee, such employee shall receive an additional day's vacation with pay for each holiday, or shall be paid an additional day's vacation with paid for each holiday, or shall be paid an additional day's pay at straight time rate, at the Employer's discretion.

Section 6. Employees may take vacation one (1) day at a time with proper advance notice

6

to the Company for a maximum of five (5) days per year. Such single day of vacation cannot be taken in conjunction with holidays as provided in Article V.

Section 7. Substitutes and on-call employees will become eligible for vacation once they accumulate 1040 hours in an anniversary year.

Section 8. Upon the employee's anniversary date of hire, based on seniority scheduling of time off, no employee will be allowed to be paid vacation in lieu of taking tame off unless approved by management. In any event, employees must take their vacation time off.

Section 9. During the months of January and February, employees shall be allowed to select their desired vacation time. Employees shall select their vacation(s) in order of seniority. The most senior person selecting first, next most senior person and so on.

## ARTICILE VII - DISCIPLINARY ACTION AND DISCHARGE

Section 1. The first thirty-one (31) days' employment of all new employees shall be considered a trial period and employees who have completed their trail period shall be discharged for just cause only.

Section 2. The Employer shall not discharge or suspend any employee who has completed the probationary period without just cause. The discharge notice must be in writing and a copy given to the employee and the Union. In the event the employee feels that his discharge or penalty is unjustified, he must within ten (10) days file a written notice of grievance with the Union. In the event the employee fails to do so, the discharge or penalty shall be final and conclusive.

Section 3. Disciplinary action and discharge shall be administered in accordance with the company's work rules.

## ARTICLE VIII - GRIEVANCES AND ARBITRATION

Section 1. A grievance, subject to the following procedure, shall include any and all disciplinary actions taken by the Employer, and all questions and disputes involving conditions of employment.

The Union shall have the right to file a group grievance as to a question or dispute involving more than one employee, which shall be filed with the Administrator for processing at the Third Step of the Grievance procedure set forth below.

In computing the time limits below, Saturdays, Sunday and holidays are excluded.

All unsettled grievances, as defined above, shall be subject to the following procedures.

FIRST:    An employee having a grievance shall present it to his/her immediate supervisor. The employee may be accompanied by his/her steward if he/she so desires. The immediate supervisor shall give his/her answer to the employee within five (5) days. If satisfactory settlement us not reached;

SECOND:   The Employee having a grievance shall reduce it to writing and file the original with the Employer, with a copy to the Union, within ten (10) days if the event upon which it based. The employee and union Steward shall immediately attempt to settle the grievance with the employee's Department Head. The Department Head shall give his/her written answer to the employee and Union Steward with five (5) days of this meeting. If grievance is not satisfactory settled with the Department Head within five (5) days o f the written answer;

THIRD:    The Steward, employee and Union Representative shall take the matter up with the Administrator of the Employee, who shall give his/her written answer within five (5) days. If satisfactory Settlement is not reached in twenty (20) days;

FOURTH:   The union may request arbitration. The Union shall thereafter submit the grievance to the American Arbitration Association for processing of said grievance through arbitration in accordance with the Rules and Regulations of the American Arbitration Association.

8

<u>Section 2</u>.  The cost of arbitration shall be shared equally by the Employer and the Union.

<u>Section 3</u>.  The decision of the arbitrator shall be final and binding on all parties and the Award of the arbitrator shall be enforceable as the agreement of the parties, at law or in equity, in any circuit court having jurisdiction thereof, as an award rendered in a proceeding under Michigan Complied Law s423.9d, and amendments thereto, or in any federal court having jurisdiction thereof.

<u>Section 4</u>.  The Employer shall provide the Union, on the effective date of this Agreement, and immediately thereafter upon the effectuating any changes therein, the names of the Administrator and name or names of the respective Department Heads to who grievances are to be directed, pursuant to the Steps outlined in Section 1., of this Article.

<u>Section 5</u>.  In the event that one (1) individual is both Administrator and Department Head, Steps "Second" and "Third" shall be merged.

<u>Section 6</u>.  A grievance concerning a discharge or suspension may be initiated at step three within the time limits often (10) days set forth in Step Two hereof.

<u>Section 7</u>.  Every employee has an absolute right to meet with his/her Steward when the employees believes that he/she has a grievance.  Steward shall be permitted a reasonable amount of time in which to investigate grievance, which may arise and shall notify their Supervisor when leaving for this purpose.  The Steward shall also notify the area entered when arriving to investigate a grievance.

<u>Section 8</u>.  In the event of a pay shortage, an employee is not bound to submit the grievance within the time period above; however, said grievance must be submitted within three (3) years of the receipt of the pay.

<u>Section 9</u>.  Nothing to the contrary withstanding, it is agreed that this Arbitration Clause does not provide a bar to the Union's right to strike during the contract term in the event the Employer breaches this contract.

<u>Section 10</u>.  In the event the employer fails to deduct and/or remit union dues and initiation fees or to pay contract wage rates (or make its contributions to the severance fund) the Union shall not be required to exhaust the grievance procedure herein but may seek judicial enforcement of the applicable contract provisions.


<u>ARTICLE IX. - MILITARY LEAVE</u>

<u>Section 1</u>.  The laws, rules and regulations of the United States in connection with returning veterans shall be applied to this Agreement as if fully set forth herein.

9

## ARTICLE X - SICK DAYS

Section 1. Employees with at least six (6) months of service in the building shall be entitled to four (4) paid working days per year, for such disabling illness which clearly prevents attendance to work. The four (4) paid days shall be part of the twelve (12) paid pays mentioned in Section 3 below.

Section 2. Employees shall not be required to provide a physician's statement certifying any absence of two (2) consecutive work days or less.

Section 3. Effective October 1, 1994, each employee shall be entitled to twelve (12) paid sick days per calendar year.

## ARTICLE XI - BEREAVEMENT

Section 1. In the event of a death in an employee's immediate family (mother, father, sister, brother, spouse, son, daughter, grandparents or grandchild), the employee is entitled to the next three (3) succeeding days off and shall be compensated at his regular hour rate for all time lost from his regular schedule as a result of his absence. In the event of the death of an employee's mother-in-law or father-in-law employee is entitled to one (1) day @ regular hourly rate. Employees shall provide the Employer with proof of death of the deceased relative.

## ARTICLE XII - INSURANCE, HEALTH & WELFARE

Section 1. The Employer shall at all times carry Worker's Compensation Insurance in sufficient amounts to provide adequate coverage and protection.

Section 2. The Employer shall, regardless of the number of employees in his employ, become a subject Employer under the terms of the Michigan Employment Security Commission.

Section 3. The Company agrees to become and/or continue as a participating company under the group insurance plan covering regularly scheduled employees in the bargaining unit who have completed their probationary period. Substitute employees who are on call shall not be covered by the insurance program effective 10/1/93.

10

(a) The Company agrees to contribute monthly to the Health and Welfare Fund of the Service Employees International Union, Local 79, AFL-CIO, Detroit, for each employee in the bargaining unit as follows:

| | | | |
|---|---|---|---|
| Effective 11/01/00 | - | $374.23 | per policy month |
| Effective 11/01/01 | - | Re-Open | |
| Effective 11/01/02 | - | Re-Open | |
| Effective 11/01/03 | - | Re-Open | |

The Insurance Benefits shall include:
(i)   Blue Cross-Blue Shield MVF-1 coverage;
(ii)  120 days semi-private coverage;
(iii) $5.00 deductible for x-ray, EKG, EEG, Lag.;
(iv)  Surgery payments according to schedule;
(v)   Life Insurance of $8,000.00;
(vi)  Accidental Death and Dismemberment Insurance of $8,000.00;

In addition, effective October 1, 1994 the Company shall provide a Vision Care Expense Benefits programs for all regularly scheduled employees as described on the attached sheet (Vision) at a cost to the Company of $2.43 per month for all regularly scheduled employees.

And effective October 1, 1994 the Company shall provide a Dental Expense Benefit Program for all regularly scheduled employees as described on the attached sheet (Dental) at a cost to the Company of $14.28 per month for all regularly scheduled employees.

(b) The sum shall be deposited directly by the Company into the depository of the Fund, the National Bank of Detroit, on or before the last day of each month for the current month's contribution.

(c) The Employer and the Union agree that, where the cost of providing the coverage's specified in this agreement exceeds the amount being contributed by the Employer, the Fund shall have unilateral authority and discretion to adjust benefits, change coverages and/or carriers, and if necessary, eliminate benefits and/or coverage in order to coordinate the cost of benefits provided with the amounts contributed by the Employer.

(d) In the event of a violation of any of the terms and/or provisions of this paragraph, or of failure on the part of the Company to comply with any of the same, the Company shall be directly liable and responsible for any and all benefits provided for herein to which any employee is, may be, or would have been entitled to receive had such violation and/or failure on the part of the company not occurred.

(e) The Union shall have the right to strike upon failure of an Employer to forward the monthly contribution to the Fund, as set forth herein, without the necessity of utilizing the arbitration provisions of this Agreement and without the necessity of litigation by the Union, the fund or any affected employee. The right to strike as set for herein, can be utilized five (5) days after the Employer's receipt of written notice of his delinquency by registered mail.

## ARTICLE XIII – PENSION

Section 1. Effective November 1, 2000 the Employer shall contribute Eighty-five cents ($.85); on November 1, 2001, $1.05 and on November 1, 2002 $.1.25 per hour, for each hour worked by all regular full-time and part-time employees into the Local 79, SEIU, Pension Fund, to provide retirement benefits for employees covered hereunder. All Employer contributions shall be remitted to the Pension Fund on a monthly basis.

## ARTICLE XIV – WAGES

| Classification | Effective 11/1/00 | | Effective 11/1/01 | Effective 11/1/02 |
|---|---|---|---|---|
| Regularly Scheduled Utility Cleaner | $15.29 | | $16.04 | $16.79 |
| Regularly Scheduled Working Leader | $15.58 | | $$16.33 | $17.08 |
| Substitutes (On-Call) | $14.18 + .93 H&W | | $14.93 + .93 H&W | $15.68 + .93 H&W |
| Total | $15.11 | $15.11 | $15.86 | $16.61 |

Note: In consideration of the fact that substitute employees are not covered by the Insurance Program, such as substitutes shall be paid as provided herein.

Section 1.  The Company agrees to provide bulletin boards so places as to be accessible to all employees covered by the Agreement exclusively for Union announcements and notices of meetings.

## ARTICLE XVI – UNIFORMS

Section 1.  The contractor or subcontractor is required to furnish all employees with an adequate number of uniforms without cost or to reimburse employees for the actual cost of the uniforms.    In addition, where uniform cleaning and maintenance is made the responsibility of the employee, all contractors and subcontractors subject to thee wage determination shall (in the absence ora bona fide collective bargaining agreement providing for a different amount, or the furnishing of contrary affirmative proof as to actual cost), reimburse all employees for such cleaning and maintenance at a rate of $3.35 a week (or 67 cents a day).  However, in those instances where the uniforms furnished are made of "wash and wear" materials, may be routinely washed and dried with other personal garments, and do not require any special treatment such as dry cleaning, daily washing, or commercial laundering in order to meet the cleanliness or appearance standards set by the nature of the work, there is no requirement that employees be reimbursed for uniform maintenance costs.

## ARTICLE XVII – NO DISCRIMINATION

Section 1.  The Union and the Employer agree that there shall be no discrimination in employment because of sex, race, creed, color, age, national origin or physical or mental handicap.

## ARTICLE XVIII – LEAVE OF ABSENCE

Section 1.  The company agrees to grant written leave of absence for a period up to three (3) months to any employee with one (1) year's seniority where adequate reasons can be shown.  By mutual agreement such leave of absence may be extended.  Any employee granted such leave of absence shall be returned to work with accumulated seniority and at the prevailing rate of pay.

13

Section 2. An employee shall be entitled to maternity leave to commence upon a date set by her doctor and to continue for ninety (90) days post-partum, and renewable for thirty (30) day increments upon a showing of medical necessity with accumulative seniority during such leave and shall be returned to work at the prevailing rate of pay in the same classification and job.

Section 3. Employees who perform jury duty shall be paid the difference between their hourly rate of pay for the number of hours they normally would have worked and jury duty pay (excluding reimbursement for travel, meals, etc.)

## ARTICLE XIX – WASHROOM FACILITIES

Section 1. Employees shall be allowed ten (10) minutes at the end of each shift to clean themselves.

## ARTICLE XX – MISCELLANOUS

Section 1. Non-bargaining unit employees will not perform bargaining unit Work except for the purpose of training, instruction or in an emergency situation.

Section 2. Provision will be made for payroll deductions for credit union purpose when such deductions are authorized in writing by an employee. Service Employee' Credit Union shall be the authorized Credit Union payroll deduction for bargaining unit employees. It is expressly understood that the company will have no administrative responsibilities in connection with payroll deductions for such credit union purposes but shall only be required to deduct and remit the Union payroll deductions when authorized in writing, with a list attached showing amounts deducted as authorized.

Section 3. The Employer agrees to grant stewards not to exceed two (2) days off with pay per contract year for the purpose of attending instructional activities in connection with the administration if the contract on advance request from Local 79.

Section 4. Employees injured on the job shall be transported to a hospital or clinic at the Company's expense and be paid for the balance of the shift.

Section 5. The Employer agrees to release stewards from work for a reasonable period of time without loss of pay to investigate and process grievances.

Section 6. Official representatives from the Union will be permitted to visit the Employer's facility to ascertain that the provisions of the Agreement are being observed and to confer with employees covered by this Agreement Access to the facility during all working hours shall not be denied.

14

Section 7.  The Employer agrees to release two members of the Union Negotiating Committee from work, without loss of pay, to participate in contract negotiations with the Employer.

Section 8.  If the Employer sells, transfers or otherwise disposes of its business or causes its business to be merged or consolidated with that of any person or entity, including itself, the employer will cause the Agreement by which such sale, transfer, disposition, merger or consolidation is made to provide that the successor shall assume all the terms and conditions of this Agreement shall retain in its employ those persons have employment rights under this Agreement.

Section 9.  There shall be no contracting out or subcontracting of any work presently performed by the bargaining unit employees during the term of this Agreement or any extension thereof.

Section 10.  The Employer hereby agrees to honor contribution deduction authorizations from its employees who are Union members in the following form:

I hereby authorize the Company to deduct from my pay the sum of N/A or each hour worked (or from each or my regular paychecks) and to forward that amount to the SEIU, COPE, PCC.  This authorization is voluntarily made on the specific understanding that the signing of this authorization and the making of payments to the SEIU, COPE, PCC are not conditions of membership in the Union if employment with the company and that the SEIU, COPE, PCC will use the money it receives to make political contributions and expenditures in connection with federal, state and local elections.

Section 11.  The Employer retains the sole rights in its discretion to manage its business; to hire, discharge for cause, layoff, assign, transfer and promote its employees; to determine the starting and quitting time and the number of hours to be worked, and all other rights and prerogatives subject only to such regulations and restrictions governing the exercise of these fights as expressly provided in this Agreement.

Section 12.  The execution of this Agreement shall not create any vested rights in the employees of the Employer, and all rights not specifically relinquished by the Employer in this Agreement, shall remain the Employer's.


## ARTICLE XXI – COMPLIANCE

Section 1.  The Union, upon twenty-four (24) hours notice, shall have the right to examine the Employer's payroll records to insure compliance with the terms set firth herein.  The Employer's payroll record, when requested by the Union, shall be examined at the Employer's office.

15

## ARTICLE XXII – DURATION AND AMENDMENT

This Agreement shall become effective as of October 1, 1996 and continue in effect until and including September 30, 1997 and shall continue for yearly periods from year to year thereafter, unless either party shall give to the other a written notice of intention to terminate, modify or amend such contract within sixty (60) days prior to the expiration date or the end of any yearly extension period.

## ARTICLE XXIII – NO STRIKES – NO LOCKOUTS

Section 1.  It is the intent and purpose of the parties hereto, set forth herein, the basic Agreement covering wages, hours of work, and other terms and conditions of employment to be observed by the parties, and to provide a procedure for the prompt and equitable resolution of disputes and grievances arising between the parties.  Accordingly, it is agreed that there shall be no interruptions in, or impediments to the Employer's operations, or any stoppages, strikes, or lockouts during the file of this Agreement arising out of such dispute or grievance.  Instead, such disputes and grievances shall be peacefully resolved under the grievance procedure provided in Article VIII.

Section 2.  It is agreed that in all cases of any authorized strikes, slowdowns, walkouts, or any other authorized act of employee of the Employer, the Union shall promptly undertake to induce employees to return to their jobs and process any dispute under Article VIII, and no liability shall attached to the Union unless, and until, any such unauthorized act has been expressly ratified by the Union.

In witness whereof, the parties hereto set their hand and seals on the date above written.

16

<u>EFFECTIVE 6/1/93</u>

|  | 58015 4 012<br>48015 004 | DENTAL<br>EXPENSES<br>BENEFITS |
|---|---|---|

DENTAL RATES ONLY

| <u>EMPLOYEE</u> | <u>ONE DEPENDENT</u> | <u>FAMILY</u> |
|---|---|---|
| $14.28 | $8.35 | $26.40 |

No
Deductible

The Blue Cross and Blue Shield of Michigan Dental Plan pays reasonable charges for covered expenses with No deductible.

Coinsurance    Class I:    Diagnostic: services, preventive services, and palliative treatment are covered at 75% of reasonable charges.

Class II:    Restorative, endodontic, periodontal services, oral surgery repairs, adjustments and relining of dentures and bridges and adjunctive general services are covered at 75% of reasonable charges.

Class III:    Construction and replacement of dentures and bridges are covered at 75% of reasonable charges.
[x] included                    [ ] not included

Class IV:    Orthodontic services are covered at 50% of reasonable charges.
[x] included                    [] not included

Annual
Maximum

Each member is entitled to a maximum benefits of $800 every contract year.

Orthodontic
Lifetime
Maximum

Each member (up to age 19) has a lifetime maximum of $800 available for orthodontic services.

17

VISION PREMIUMS

| | | |
|---|---|---|
| Employee Premium | $2.45 | VISION |
| One Dependent | $2.30 | CARE |
| Family | $6.17 | EXPENSE BENEFITS |

DEPENDENT RATE DOES NOT INCLUDE THE EMPLOYEE PREMIUM

Co-payments

Vision expense benefits cover the reasonable charges of participating providers, subject to the following member co-payments:

| | |
|---|---|
| Vision Examination | $5.00 |
| Lenses and Frames | $7.50 |
| Contract Lenses | $7.50 |

The total co-payment for each member, during any period of 24 consecutive months, will not exceed $12.50 when services are obtained from a participating provider.

Vision

Blue Cross and Blue Shield of Michigan vision care benefits provide for the testing of visual acuity, external examination of the eye, binocular measure, tonometry (and the medication for dilating the pupils and desensitizing the eyes for tonometry when needed), and a summary of findings. The examination also includes a determination of the need for correction of visual acuity, prescription for lenses if needed, and confirmation of the correctness and appropriateness of the finalized eyeglasses obtained from the prescription. If an optometrist's examination determines the need for an examination by an opthalmological examination occurs within 60 days of the original optometry examination. The second examination will not require a member co-payment.

Lenses

Vision expense benefits cover lenses which are made of ground or molded glass or plastic.

Frames

Vision expense benefits cover the acquisitions cost of frames up to a maximum of $13.75 plus the participating provider's reasonable dispensing fee. The maximum payment level of the acquisition cost will be increased to $14.25 on October 1, 1980 and to $14.75 on October 1, 1981.

18

In witness whereof, the parties hereto set their hands and seals on the date above written.

Signed this 1st day of November 2000.

FOR THE EMPLOYER:
BROOKS & BROOKS SERVICES, INC

BY: _____
Chief Operating Officer

FOR THE UNION
SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL, 79
AFL-CIO

BY: _____
President

BY: _____
Business Representative

19

# EXHIBIT B



# SEIU
National Industry Pension Fund

1313 L Street, NW
Washington, DC 20005
202/639-0890 • 800/458-1010

August 17, 2005

**_BY COMMERCIAL CARRIER_**

Mr. Larry R. Brooks
President
Brooks & Brooks Services, Inc.
1227 Good Hope Rd, SE
Washington DC 20020

         RE:    COMPLETE WITHDRAWAL LIABILITY
                 BROOKS & BROOKS SERVICES, INC.

Dear Mr. Brooks:

      This is a notice and demand for payment of withdrawal liability owed to the SEIU National Industry Pension Fund ("NIPF") by Brooks & Brooks Services, Inc., pursuant to Section 4219 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. Section 1399, and the SEIU NIPF Plan document.

      NIPF records indicate that Brooks & Brooks Services, Inc. incurred a complete withdrawal from the Plan as of December 1, 2004, because it permanently ceased to have an obligation to contribute under the Plan, or permanently ceased all covered operations under the Plan. This notice and demand for payment of withdrawal liability applies equally to all members of any controlled group of trades or businesses, as defined in Section 414(c) of the Internal Revenue Code, of which the above named business is a member.

      The Multiemployer Pension Plan Amendments Act of 1980 requires the Trustees of NIPF to assess and collect each withdrawing employer's withdrawal liability. Withdrawal liability is determined based on NIPF's unfunded vested liability (i.e., vested benefits not covered by assets).

      NIPF has calculated the gross withdrawal liability of Brooks & Brooks Services, Inc. to be $125,282.71. Under the Plan's _de minimis_ provision, this constitutes a net withdrawal liability of $100,565.42. This withdrawal liability has been calculated based on NIPF information applicable to employer withdrawals occurring in 2004, and is based on the Plan's unfunded vested liability as of December 31, 2003. The withdrawal liability calculation worksheet is attached.

**REGIONAL OFFICE**
Suite #302
642 Harrison Street
San Francisco, CA. 94107-1351
415/905-8484



At your option, the withdrawal liability may be amortized and paid in monthly installments of $2,433.53, quarterly installments of $7,256.82, or annual installments of $29,027.29 in accordance with the attached minimum required payment schedule or the liability may be paid in a lump sum of $100,565.42. If you choose an installment option, amortization charges will accrue on the outstanding balance at the rates indicated on the attached minimum payment schedule.

Payment is due on or before October 1, 2005. Subsequent payments will be due on the first of the month in accordance with the chosen installment method. For example, the second monthly payment is due November 1, 2005 or the second quarterly payment is due January 1, 2006. Please mail your check made payable to SEIU National Industry Pension Fund:

> Lori Wood, Administrative Director of Benefits
> SEIU National Industry Pension Fund
> 1343 L Street, N.W.
> Washington, D.C. 20005

Subject to applicable law, an employer shall be in default if it fails to make, when due, any monthly payment, if the failure is not cured by the payment of delinquencies plus required additional interest within 60 days after the employer receives written notification from NIPF of such failure. In the event of a default, NIPF may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.

If you have any questions with regard to this matter, please direct them in writing to my attention. Inquiries or requests for information do not stay your payment obligations.

Sincerely,

Lori Wood
Administrative Director of Benefits
SEIU National Industry Pension Fund


Attachments

| Brooks & Brooks Services | |
|---|---|
| Withdrawal Year | 2004 |
| UVB | 207,176,335.00 |
| Er's contributions y/e 03 | 88,286.31 |
| Adjusted total ER | 145,996,475.67 |
| Portion of withdrawing Er | 125,282.71 |
| DeMinimus | 50,000.00 |
| Offset to DeMinimus | 25,282.71 |
| Revised DeMinimus | 24,717.29 |
| Employer's withdrawal | 100,565.42 |

**SEIU NATIONAL INDUSTRY PENSION FUND**
**WITHDRAWAL LIABILITY CONTRIBUTION DETERMINATION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| (a) | Employer | **Brooks & Brooks Services** | | | | | |
| (b) | Partial Withdrawal Date | 12/1/2004 | | | | | |
| (c) | Withdrawal Liability Assessment | | | $ | 100,565.42 | | |
| (d) | Hours of contributions 10 yrs prior to withdrawal year (YOW) | | | | | | |
| | YOW-10 | YOW-7 | | YOW-4 | 22,042.90 | YOW-1 | 15,456.40 |
| | YOW-9 | YOW-6 | | YOW-3 | 25,997.90 | | |
| | YOW-8 | YOW-5 | 12,628.00 | YOW-2 | 21,624.70 | | |
| (e) | Highest consecutive three-year average hours | | | | 23,221.83 | | |
| (f) | Highest contribution rate prior to termination | | | $ | 1.2500 | | |
| (g) | Required annual payment (e) * (f) | | | $ | 29,027.29 | | |
| (h) | Amortization ratio = (c) / (g) | | | | 3.46 | | |
| (i) | Largest value in Table Column I which is less than (h) | | | | 2.795565 | | |
| (j) | Number of years for value (i) | | | | 3.00 | | |
| (k) | Amount amoritzed in (j) years = (g) * (i) | | | $ | 81,147.68 | | |
| (l) | Amount left to amortize = (c) - (k) | | | $ | 19,417.74 | | |
| (m) | Table Column II value for (j) years | | | | 1.2422970 | | |
| (n) | Amount to amortize in final year = (l) * (m): show 0 if (j) = 20 | | | $ | 24,122.60 | | |
| (o) | Quarterly payment = (g) divided by 4 | | | $ | 7,256.82 | | |
| (p) | Adjusted monthly payment = (o)/2.98201 | | | $ | 2,433.53 | | |
| (q) | Full quarters to pay in final year = (n) / (o) | | | | 3 | | |
| (r) | Amount to pay in final quarter = (n) - [(q) * (o)] | | | | 2,352.13 | | |
| (s) | Full monthly payments in final quarter = (r) / (p) | | | | - | | |
| (t) | Number of full monthly payments = [12 * (j)] + [3 * (q)] + s | | | | 45.00 | | |
| (u) | Final payment = (r ) - [(s) * (p)] | | | | 2,352.13 | | |

**Employer payment schedule:**

$ 2,433.53 per month for _____ 45.00 months plus a final payment of $ 2,352.13

Note: Monthly payments are adjusted for interest to be equivalent to quarterly payments
(PBGC letter ruling 85-18.)

# EXHIBIT C



**SEIU**
National Industry Pension Fund

11 Dupont Circle, N.W. • Ste. 900
Washington, D.C. 20036-1202
202-730-7500 • 800-458-1010 (Toll Free)

March 28, 2007

<u>**VIA OVERNIGHT MAIL**</u>

Robert Walker
Brooks and Brooks Services
5550 Tuxedo Road, Suite D
Cheverly, MD  20781-1310

      Re:  SEIU National Industry Pension Fund and Brooks &
           Brooks Services; ERISA Withdrawal Liability

Dear Mr. Walker:

    By letter dated August 17, 2005, SEIU National Industry
Pension Fund (the "Fund") notified Brooks & Brooks Services
("B&BS") that the Fund had determined that B&BS had completely
withdrawn from the Fund as of December 1, 2004, and that it had
incurred a net withdrawal liability of $100,565.42.

    The Fund has determined that there were errors in the
spreadsheet that it used to calculate B&BS's withdrawal
liability.  After correcting the error, we have recalculated the
gross withdrawal liability of B&BS to be $97,006.32.  Under the
Plan's *de minimis* provision, this constitutes a net withdrawal
liability of $47,006.32, rather than the original assessment of
$100,565.42.  The recalculated withdrawal liability is based on
the Fund's information for employer withdrawals occurring in
2004, and it is based on the Plan's unfunded vested liability as
of December 31, 2003.

    The revised withdrawal liability calculation worksheet and
installment payment worksheet and minimum payment schedule are
attached.  The first payment under the installment payment
schedule was due on September 1, 2005, and monthly payments were
and are due on the first day of each month thereafter until
payment is completed.

    At the employer's option, the withdrawal liability may be
amortized and paid in monthly installments according to the
attached minimum required payment schedule, or such liability
may be paid in a lump sum.  If the employer chooses the monthly

**REGIONAL OFFICE**
Suite #302
642 Harrison Street
San Francisco, CA. 94107-1351
415/905-8484



installment option, amortization charges will accrue on the outstanding balance at the annual rates indicated on the attached minimum payment schedule.

Please make checks payable to SEIU National Industry Pension Fund and send them to:

> Sarah Wilkerson, Financial Manager
> SEIU National Industry Pension Fund
> 11 Dupont Circle, N.W., Ste 900
> Washington, D.C.  20036

Subject to applicable law, an employer shall be in default if it fails to make, when due, any monthly payment, if the failure is not cured by the payment of delinquencies plus required additional interest within 60 days after the employer receives written notification from the Fund of such failure.  In the event of a default, the Fund may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made.

Sincerely,

Lori Wood
Deputy Director SEIU Benefit Funds

Attachments

Cc:  Jack Sahm
     Eunice Washington
     Sarah Wilkerson
     Robert Seltzer

**SEIU National Industry Pension Fund**
**Withdrawal Liability**
**Brooks and Brooks - FINAL**

| | | |
|---|---|---|
| Withdrawal date | 12/01/04 | |
| Initial payment due | 09/01/05 | |

Assessment
| | |
|---|---|
| Principal | 47,006.32 |
| Interest | 145.11 |
| Total WL | 47,151.43 |

| Date Due | Month | Date Paid | Check no. | Amt. Due | Amt. Paid | Principal | Interest | Remaining Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 47,006.32 |
| 09/01/05 | 1.00 | | | 8,066.21 | | 8,066.21 | - | 38,940.11 |
| 10/01/05 | 2.00 | | | 8,066.21 | | 8,016.83 | 49.38 | 30,923.28 |
| 11/01/05 | 3.00 | | | 8,066.21 | | 8,027.00 | 39.21 | 22,896.28 |
| 12/01/05 | 4.00 | | | 8,066.21 | | 8,037.17 | 29.04 | 14,859.11 |
| 01/01/06 | 5.00 | | | 8,066.21 | | 8,047.37 | 18.84 | 6,811.74 |
| 02/01/06 | 6.00 | | | 6,820.38 | | 6,811.74 | 8.64 | - |
| | | | | 47,151.43 | - | 47,006.32 | 145.11 | |

| Payment Due | Interest Thru Date | # of Days | Interest Rate | Daily Rate | Amount Due | Interest Due |
|---|---|---|---|---|---|---|
| 09/01/05 | 12/31/05 | 121 | 7.25% | 0.0001986 | 8,066.21 | 193.87 |
| 12/31/05 | 12/31/06 | 365 | 9.25% | 0.0002534 | 8,066.21 | 746.12 |
| 12/31/06 | 09/20/07 | 263 | 10.25% | 0.0002808 | 8,066.21 | 595.74 |
| 10/01/05 | 12/31/05 | 91 | 7.25% | 0.0001986 | 8,066.21 | 145.80 |
| 12/31/05 | 12/31/06 | 365 | 9.25% | 0.0002534 | 8,066.21 | 746.12 |
| 12/31/06 | 09/20/07 | 263 | 10.25% | 0.0002808 | 8,066.21 | 595.74 |
| 11/01/05 | 12/31/05 | 60 | 7.25% | 0.0001986 | 8,066.21 | 98.13 |
| 12/31/05 | 12/31/06 | 365 | 9.25% | 0.0002534 | 8,066.21 | 746.12 |
| 12/31/06 | 09/20/07 | 263 | 10.25% | 0.0002808 | 8,066.21 | 595.74 |
| 12/01/05 | 12/31/05 | 30 | 7.25% | 0.0001986 | 8,066.21 | 48.07 |
| 12/31/05 | 12/31/06 | 365 | 9.25% | 0.0002534 | 8,066.21 | 746.12 |
| 12/31/06 | 09/20/07 | 263 | 10.25% | 0.0002808 | 8,066.21 | 595.74 |
| 01/01/06 | 12/31/06 | 364 | 9.25% | 0.0002534 | 8,066.21 | 744.08 |
| 12/31/06 | 09/20/07 | 263 | 10.25% | 0.0002808 | 8,066.21 | 595.74 |
| 02/01/06 | 12/31/06 | 333 | 9.25% | 0.0002534 | 6,820.38 | 575.57 |
| 12/31/06 | 09/20/07 | 263 | 10.25% | 0.0002808 | 6,820.38 | 503.73 |
| | | | | | | 8,270.44 |

| Total Due | $ 55,421.87 |
|---|---|

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

Service Employees International Union National Industry Pension Fund, et al.,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___ DC
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

Brooks & Brooks Services, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___ DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard C. Welch
Mooney, Green, Baker & Saindon
1920 L St. NW, Suite 400
Washington, DC 20036

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ |

---

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraini Order/Preliminary Injunction**

Any nature of suit from any category m be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 US 3410
☐ 900 Appeal of fee determination under equal access to Justi
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ⊙ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Co* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting & Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☒ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-Employment<br>☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment & Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act |

## V. ORIGIN

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Jud from Mag. J

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 USC section 1132, et al., 29 U.S.C. section 185(a) to collect withdrawal liability amounts owed, interest, attorneys' fees and costs, and other legal relief

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ 47,006.32    Check YES only if demanded in c
JURY DEMAND:    YES ☐    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  4/2/08    SIGNATURE OF ATTORNEY OF RECORD

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Se II.

IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found und the category of case.

VI.      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.      RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Cler Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.